UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| EVAN WEINER and TIMOTHY McCLAUSLAND, on behalf themselves and all other similarly situated,<br>　　　　　Plaintiff<br><br>v.<br><br>SNAPPLE BEVERAGE CORPORATION,<br><br>　　　　　Defendant | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | Civil Action No. 07-cv-08742<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT AND JURY TRIAL DEMANDED** |

Plaintiffs, on behalf of themselves and all others similarly situated, by their

undersigned counsel, upon knowledge as to their own acts and upon information and

belief as to defendant and its actions, brings the following First Amended Class Action

Complaint against Defendant Snapple Beverage Corporation ("Snapple" or the

"Company").

## NATURE OF ACTION

1.　　This is a class action for declaratory judgment, injunctive relief, reimbursement of

losses sustained and damages, alleging that Defendant's marketing, advertising and

promotion of its beverages is misleading, and inaccurate, and deceptive.

2.　　The unlawful marketing, advertising and promotion includes, but is not limited to,

the following:

　　a.　**"ALL NATURAL"** – Marketing, advertising and promoting its products as

　　"All Natural" when the products contain High Fructose Corn Syrup ("HFCS")

　　and/or other non natural products.  The term "All Natural" is regularly used by

#3826773

1

manufacturers to describe a product that does not have any chemically altered or man-made ingredients, and that therefore is a more healthy choice than competing products that contain processed ingredients – and worth a premium price as compared to beverages of the same size and type that are not all natural, because of that benefit.  However, HFCS is a highly processed sugar substitute that does not exist in nature and is not "All Natural."  The use by Snapple of the term "All Natural" to describe its products when, in fact, the products are not, is misleading, inaccurate and deceptive.

b.    **"FRUIT JUICE" CONTENT**– Marketing, advertising and promoting its beverages as containing a specific fruit juice(s) when, in fact, no such fruit juice(s) is contained in the beverages. For example, Snapple's Acai Blackberry Juice drink contains neither acai berry juice nor blackberry juice.  This example is especially significant because acai berry  juice is frequently marketed as a premium priced exotic juice that is extremely high in antioxidants.  Snapple markets this beverage with depictions of  blackberries and round purple berries presumed to be acai berries.  In fact, the only juice contained in the products is pear juice.  Snapple's unlawful marketing, advertising and promotion of its beverages as containing specific fruit juice(s) when, in fact, no such fruit juice(s) are contained in the beverages, is common across many of Defendant's beverages.

3.    Plaintiffs bring this action on behalf of themselves and on behalf of a class of similarly situated persons, seeking declaratory judgment, injunctive  relief, reimbursement of losses and damages.

4.    Plaintiffs' claims against Defendant include (1) violation of the New York Deceptive Trade Practices Act, Section 349, General Business Law, (2) Unjust

2

enrichment, (3) Breach of Express Warranty and (4) Breach of the Implied Warranty of Merchantability.

## PARTIES

5.      Plaintiff Evan Weiner is, and at all times relevant hereto has been, a resident of New Jersey residing at 9 Endsleigh Place, Robbinsville, Mercer County, and is over the lawful age of majority.

6.      Plaintiff Timothy McCausland is, and at all times relevant hereto has been, a resident of New York residing in the town of Rock Hill, Sullivan County, and is over the lawful age of majority.

7.      Plaintiffs are filing this claim on behalf of themselves and all persons in the United States, except the State of New Jersey, similarly situated who purchased a Snapple beverage within  six years prior to the filing of the case at bar until present, that was marketed, advertised or promoted as being "All Natural," and/or containing a specific fruit juice(s), different than any fruit juice actually contained in the Snapple beverage.   Specifically excluded from the class is any entity in which Defendant has a controlling interest, and the officers, directors, employees, affiliates, subsidiaries, legal representatives, heirs, successors, and assigns of any such entity, together with any immediate family member of any officer, director or employee of said companies.  Also excluded from the Class is any Judge or Magistrate presiding over this Action and members of their immediate families, and any counsel for any Defendant, counsel's staff, and immediate families.

8.      Defendant Snapple Beverage Corporation is the manufacturer, seller and distributor of Snapple products that were unlawfully marketed, advertised and promoted to consumers, and which Plaintiffs purchased.  Snapple Beverage Corporation's principal

place of business is located in Rye Brook, New York.  Snapple products are sold

throughout the United States, including the State of New York, and internationally.

## JURISDICTION AND VENUE

9.      This Court has original jurisdiction over Plaintiffs' claims pursuant to the Class

Action Fairness Act, 28 U.S.C. §1332(d).

10.     This is a civil class action that was commenced after February 18, 2005 in which

the matter in controversy exceeds $5,000,000, exclusive on interest and costs.

11.     Plaintiff Weiner is a member of the Class and Subclass and is a citizen of a State

different from any Defendant.

12.     This action does not satisfy the exemptions to jurisdiction found in 28 U.S.C.

§§1332(d)(4)(A) and (B).

13.     This action does not satisfy the exemptions to jurisdiction found in 28 U.S.C.

§1332(d)(3).

14.     Venue is proper in this District pursuant to 28 U.S.C. §1391.  Defendant's

principal place of business in Rye Brook, New York, is located within this District and

Defendant is subject to personal jurisdiction in this District.  Defendant does significant

business in this District.

## CLASS ACTION ALLEGATIONS

15.     Plaintiffs bring this action on behalf of themselves and all other similarly situated

persons residing in the United States, except the State of New Jersey, pursuant to Rule 23

of the Federal Rules of Civil Procedure.  Plaintiffs seek to represent

        a)   a Class of all persons residing in the United States, except in the State of New

        Jersey, who purchased a Snapple beverage marketed, advertised and promoted as

        "All Natural," but that contained HFCS or other unnatural ingredients, during the

six (6) years prior to the commencement of suit until such time as Defendant reforms said practice;

b)  a Subclass of all persons residing in the United States, except in the State of New Jersey, who purchased a Snapple beverage marketed, advertised and promoted as containing a specific fruit juice(s) when, in fact, no such specific fruit juice(s) was contained in the beverage, during the six (6) years prior to the commencement of this suit until such time as Defendant reforms said practice.

16.    Alternatively, Plaintiffs seek to represent the aforementioned Class and Subclass, limited only to those similarly situated persons residing in, or who purchased a Snapple Beverage in, the State of New York.

17.    The Class and Subclass are so numerous that joinder of all members is impracticable.  While the exact number of Class and Subclass members is presently unknown, and can only be ascertained through appropriate discovery, Plaintiffs believe the members of the Class and Subclass exceed one thousand (1,000) persons.

18.    Common questions of law and fact exist as to all members of the Class and Subclass and predominate over any questions solely affecting individual members of the Class and Subclass.  Among questions of law and fact common to the Class and Subclass are:

a.    Whether HFCS is an "All Natural" ingredient.

b.    Whether use of the phrase "All Natural" to market, advertise and promote beverages containing HFCS is misleading, and/or inaccurate, and/or deceptive.

c.    Whether Defendant was able to, and did, charge a premium price for its beverages, as compared to beverages of the same size and type that were not

marketed, advertised and promoted as "All Natural" and/or containing a specific fruit juice(s). due to its unlawful marketing, advertising and promotion.

d.   Whether Defendant expressly and/or impliedly warranted that its beverages contained "All Natural" ingredients.

e.   Whether Defendant breached warranties by using HFCS as an ingredient in beverages marketed, advertised and promoted as "All Natural."

f.   Whether the marketing, advertising and promotion of beverages as containing a specific fruit juice(s) when, in fact, no such specific fruit juice(s) is contained in the beverages  is misleading, inaccurate, and deceptive.

g.   Whether Defendant expressly and/or impliedly warranted that its beverages contained specific fruit juice(s) when, in fact, the specific fruit juice(s) was not contained in the beverages.

h.   Whether Defendant breached warranties by excluding specific types of fruit juice(s) as ingredients in beverages marketed, advertised and promoted as containing specific types of fruit juice(s).

i.   Whether Defendant has been unjustly enriched as a result of its unlawful business practices.

j.   Whether Defendant's actions as described above violate the New York Deceptive Trade Practices Act, Section 349, General Business Law *et. seq.*

k.   Whether Defendant should be enjoined from continuing the above-described practices.

l.   Whether Defendant should be required to make restitution, disgorge profits, reimburse losses, pay damages and pay treble damages as a result of the above-described practices.

19.     Plaintiffs' claims are typical of the claims of the members of the Class and

Subclass as all members of the Class and Subclass are similarly affected by Defendant's

wrongful conduct in violation of the New York Deceptive Trade Practices Act, Section

349, General Business Law *et seq.*

20.     Plaintiffs will fairly and adequately protect the interests of the members of the

Class and Subclass and have retained counsel competent and experienced in class action

litigation.

21.     A class action is superior to all other available methods for the fair and efficient

adjudication of this controversy since joinder of all members is impracticable.

Furthermore, as the damages suffered by the individual members of the Class and

Subclass may be relatively small, the expense and burden of individual litigation make it

impossible for members of the Class and Subclass to individually redress the wrongs

done to them.  There will be no difficulty in the management of this class action.

## STATEMENT OF FACTS

22.     Defendant Snapple manufacturers, distributes (to its retailers), markets,

advertises, promotes and sells (through its retailers) Snapple beverages throughout the

United States, including the State of New York.  According to Cadbury-Schweppes, the

parent company of Snapple, consumers drank over 150 million gallons of Snapple in

2000 – more than half a gallon for every person in the United States.  Snapple's line of

beverages includes, among others, iced teas and juice drinks.

23.     Snapple maintains a website, www.snapple.com.  This website allows consumers

all over the United States, including New York, to view marketing, advertising and

promotional information pertaining to Snapple's family of products.

24.    Snapple, at various times over the course of the past six (6) years, has marketed,

advertised and promoted its family of products on television, radio, the internet and in

print advertisements.

**"ALL NATURAL"**

25.    In its marketing and advertising, Snapple promotes many of its iced teas and juice

drinks as "All Natural."

26.    In fact, Snapple's iced teas and juice drinks are not "All Natural" because

beverages, including but not limited to, Lime Green Tea, Kiwi Teawi, Raspberry Tea,

Peach Tea, Mint Tea, Lemon Tea, Caffeine Free Lemon Tea, Lemonade Iced Tea, Red

Tea - and juice drinks including, but not limited to, Lemonade, Pink Lemonade, Super

Sour Lemonade, Acai Blackberry, Snapricot Orange, Snapple Apple, Cranberry

Raspberry, Fruit Punch, Grapeade, Kiwi Strawberry, Mango Madness, Raspberry Peach,

Summer Peach, Go Banana, Out-Red-Geous Orange, Summer Peach, Orangeade, and

What-a-Melon all contain HFCS.

27.    HFCS  is a highly processed sugar substitute.

28.    Despite its two (2) major constituents, glucose and fructose, being widely found

in nature, HFCS does not exist in nature.

29.    HFCS is produced by processing cornstarch to yield glucose, and then processing

a significant portion of the glucose to produce fructose.

30.    To produce HFCS cornstarch is first treated with a purified enzyme, alpha-

amylase, to produce shorter chains of sugars called polysaccharides.  Alpha-amylase is

industrially produced by a bacterium, usually Bacillus.sp.

31.    The polysaccharides (short chains of sugar) are then broken down even further by

adding a second enzyme called glucoamylase.  Glucoamylase is industrially produced by

a fungus, Apergillus. The addition of glucoamylase to the polysaccharides yields the simple sugar glucose.

32.    In lieu of using alpha-amylase or glucoamylase, acids may be used in the HFCS production process.

33.    A third enzyme, gluco-isomerase, then coverts glucose to a mixture of about 42 percent fructose and 50 to 52 percent glucose with some other sugars (or short polymers of glucose) mixed in. While alpha amylase and glucoamylase are added directly to the slurry, pricey glucose-isomerase is packed into columns and the sugar mixture is then passed over it. The sweet liquid with 42 percent fructose is used as HFCS 42 in some applications.

34.    To obtain a higher percentage of fructose in HFCS, two more steps are necessary. First, a liquid chromatography step takes the mixture to 90 percent fructose. Next, the 90 percent mixture is back-blended with the original mixture to yield a final concentration of about 55 percent fructose. This mixture is what the industry calls HFCS 55, and is the industry standard.

35.    Although the enzymes used to create HFCS are created from naturally occurring substances, the process described above does not occur naturally. In fact, HFCS was not mass produced until the 1970's. Prior to that there was no HFCS in products.

36.    Furthermore, the molecules in HFCS (and Snapple) were not extracted from natural sources. Instead, the molecules in HFCS were created through enzymatically catalyzed chemical reactions in factories.

#3826773

## "FRUIT JUICE" CONTENT

37.    Snapple markets, advertises and promotes its beverages as containing specific

fruit juice(s), e.g. Acai Blackberry Juice Drink is marketed, advertised and promoted as

containing acai berry juice and blackberry juice.

38.    In fact, Snapple's beverages do not contain the specific fruit juice(s) as marketed,

advertised and promoted, e.g. Snapple Acai Blackberry Juice Drink does not contain acai

berry juice and does not contain blackberry juice.

39.    As such, Defendant makes affirmative misrepresentations as to the specified fruit

juice(s) contained in its beverages when, in fact, it is primarily a water and High Fructose

Corn Syrup (HFCS) drink that does not contain the specified fruit juice(s).

## PLAINTIFF WEINER'S PURCHASE OF SNAPPLE

40.    On numerous occasions over the course of the preceding six (6) years, Plaintiff

Weiner purchased, in the State of New York, many of the Snapple beverages referenced

in Paragraph 26, supra, including, but not limited to, Acai Blackberry Juice Drink and

Acai Mixed Berry red tea, while site seeing or attending concerts or shows in Manhattan.

Specifically, on one such occasion, Plaintiff Weiner purchased a 16 ounce bottle of

Snapple Acai Blackberry Juice Drink while waiting for a train at New York's Penn

Station following his attendance at a circus at Madison Square Garden.

41.    At the time of each said purchase, including Plaintiff Weiner's purchase of

theSnapple Acai Blackberry Juice Drink referenced in Paragraph 40, supra, Snapple

marketed, advertised and promoted its beverages being "All Natural."

42.    For example, in television commercials viewed by Plaintiff Weiner at and around

the time of his purchases, specifically television commercials that featured animated fruit

and narratives stating that Snapple's fruit was "never in trouble" and "wholesome," Snapple advertised, marketed and promoted its products as being "All Natural."

43.     Similarly, in radio advertisements heard by Plaintiff Weiner at and around the time of his purchases, specifically radio commercials that featured the voice of Wendy "The Snapple Lady," Snapple marketed, advertised and promoted its products as being "All Natural."

44.     Finally, on the packaging of the beverages purchased by Plaintiff Weiner, specifically Snapple's Acai Blackberry Juice Drink, Snapple advertised, marketed and promoted it products as being "All Natural."

45.     Snapple's marketing, advertising and promotion of its products as "All Natural" was material because it was Plaintiff Weiner's practice to purchase products that were all natural and, as a result of seeing and hearing Snapple's television commercials, radio commercials and product packaging, Plaintiff Weiner believed Snapple's products were "All Natural."

46.     At the time of each said purchase, including Plaintiff Weiner's purchase of Snapple Acai Blackberry Juice Drink referenced in Paragraph 40, supra,  Snapple marketed, advertised and promoted its beverages as containing a specific fruit juice(s) when, in fact, no such specific fruit juice(s) was contained in the beverages.

47.     For example, in television commercials viewed by Plaintiff Weiner at and around the time of his purchases, specifically television commercials that featured animated fruit and narratives stating that Snapple's fruit was "never in trouble" and "wholesome," Snapple advertised, marketed and promoted its products as containing a specific fruit juice(s).

48.    Similarly, on the packaging of the beverages purchased by Plaintiff Weiner,

including Plaintiff Weiner's purchase of Snapple Acai Blackberry Juice Drink referenced

in Paragraph 40, supra, Snapple marketed, advertised and promoted its beverages as

containing a specific fruit juice(s) when, in fact, the specific fruit juice(s) was not

contained in the beverages.

49.    Snapple's marketing, advertising and promotion of its products as containing

specific fruit juice(s) was material because it was Plaintiff Weiner's practice to purchase

products that contained specific fruit juices, specifically acai berry juices that are higher

in antioxidants, and, as a result of seeing and hearing Snapple's television commercials

and product packaging, Plaintiff Weiner believed Snapple's products contained the

specific juices as represented.

50.    As a result of its misleading, inaccurate and deceptive marketing, advertising and

promotion, Snapple was able to and did charge a premium price for its Snapple beverages

– a price higher than that charged for comparable products of the same size and type that

were not marketed, advertised or promoted as "All Natural" or containing a specific type

of fruit juice.

51.    At the time of each said purchase, including Plaintiff Weiner's purchase of

Snapple Acai Blackberry Juice Drink referenced in Paragraph 40, supra, Plaintiff Weiner

was willing to and did pay a premium price for a Snapple beverage that he thought was

"All Natural" and contained a specific type of fruit juice.

52.    However, in contrast to the manner in which Snapple marketed, advertised and

promoted its beverages, the beverages purchased by Plaintiff Weiner were not "All

Natural" and did not contain the specific type of fruit juice as represented.

53.     As a result of Defendant's misleading, inaccurate, and deceptive marketing, advertising and promotion of its beverages, Plaintiff Weiner suffered an ascertainable loss in that he paid a premium price for Snapple's beverages, a price higher than that charged for comparable beverages of the same size and type that were not marketed, advertised or promoted as "All Natural" or containing a specific type of fruit juice, but received something less than and different from what was promised and bargained for.

**PLAINTIFF McCAUSLAND'S PURCHASE OF SNAPPLE**

54.     On numerous occasions over the course of the preceding six (6) years, Plaintiff McCausland, a resident of New York, purchased many of the Snapple beverages referenced in Paragraph 26, supra, including, but not limited to, Snapple Kiwi Strawberry Juice Drink and Snapple Iced Tea.  Specifically, on one such occasion, Plaintiff McCausland purchased 16 ounce bottles of Snapple Iced Tea and Kiwi Strawberry Juice Drink at the convenience store of a Mobil gas station located in Rock Hill, New York.

55.     At the time of each said purchase, including Plaintiff McCausland's purchase of the Snapple Kiwi Strawberry Juice Drink and Snapple Iced Tea referenced in Paragraph 54, supra, Snapple marketed, advertised and promoted its beverages being "All Natural."

56.     For example, in television commercials viewed by Plaintiff McCausland at and around the time of his purchases, specifically television commercials that featured Wendy "The Snapple Lady,"  Snapple advertised, marketed and promoted its products as being "All Natural."

57.     Similarly, in radio advertisements heard by Plaintiff McCausland at and around the time of his purchases, specifically radio commercials that featured the voice of Wendy "The Snapple Lady," Snapple marketed, advertised and promoted its products as being "All Natural."

#3826773

13

58.     Finally, on the packaging of the beverages purchased by Plaintiff McCausland, specifically Snapple's Kiwi Strawberry Juice Drink and Iced Tea, Snapple advertised, marketed and promoted it products as being "All Natural."

59.     Snapple's marketing, advertising and promotion of its products as "All Natural" was material because it was Plaintiff McCausland's practice to purchase products that were all natural and, as a result of seeing and hearing Snapple's television commercials, radio commercials and product packaging, Plaintiff McCausland believed Snapple's products were "All Natural."

60.     As a result of its misleading, inaccurate and deceptive marketing, advertising and promotion, Snapple was able to and did charge a premium price for its Snapple beverages – a price higher than that charged for comparable products of the same size and type that were not marketed, advertised and promoted as "All Natural."

61.     At the time of each said purchase, including Plaintiff McCausland's purchase of Snapple Kiwi Strawberry Juice Drink and Snapple Iced Tea referenced in Paragraph 54, supra, Plaintiff McCausland was willing to and did pay a premium price for Snapple beverages that he thought were "All Natural."

62.     However, in contrast to the manner in which Snapple marketed, advertised and promoted its beverages, the beverages purchased by Plaintiff McCausland were not "All Natural."

63.     As a result of Defendant's misleading, inaccurate, and deceptive marketing, advertising and promotion of its beverages, Plaintiff McCausland suffered an ascertainable loss in that he paid a premium price for Snapple's beverages, a price higher than that charged for comparable beverages of the same size and type that were not

marketed, advertised and promoted as "All Natural," but received something less than and different from what was promised and bargained for.

## COUNT I

**VIOLATION OF THE NEW YORK DECEPTIVE TRADE PRACTICES ACT**

64.    Plaintiffs repeat and re-allege each and every allegation above, as if set forth in full herein.

65.    Defendant's business practices of marketing, advertising and promoting its beverages in a misleading, inaccurate, and deceptive manner by misrepresenting its beverages as "All Natural" and/or containing a specific type of fruit juice(s) constitutes the use by Defendant of unconscionable commercial practices, deception, and misrepresentation and, thus constitutes multiple, separate violations of the New York Deceptive Trade Practices Act, Section 349, General Business Law, *et seq*.

66.    In marketing, advertising and promoting its beverages to consumers, including Plaintiffs and members of the Class and Subclass, Defendant made the material misrepresentations and omissions set forth in this Complaint throughout the United States, including the State of New York.

67.    Defendant's unlawful conduct set forth in this Complaint is material in that it has the capacity to mislead or deceive consumers, including Plaintiffs and members of the Class and Subclass.

68.    Defendant's unconscionable commercial practices, false promises, misrepresentations and omissions set forth in this Complaint are material in that they relate to matters which reasonable persons, including Plaintiffs and members of the Class and Subclass, would attach importance to in their purchasing decisions or conduct regarding the purchase of Snapple beverages.

#3826773

69.     As a result of Defendant's practices as described herein, Plaintiffs and members of the Class and Subclass have suffered an ascertainable loss of money or property in that they paid a premium price for Snapple's beverages, a price higher than that charged for comparable products of the same size and type that were not marketed as "All Natural" and did not contain a specific type of fruit juice, but received something less than and different from what was promised and bargained for.

## COUNT II

### UNJUST ENRICHMENT AND COMMON LAW RESTITUTION

70.     Plaintiffs repeat and re-allege each and every allegation above, as if set forth in full herein.

71.     Defendant, as the manufacturer of Snapple beverages, distributes its products to retailers for sale to the public.  Through retailers, Defendant is able to and does derive the indirect yet substantial benefit of realizing profits from the sale of its beverages to consumers.

72.     In marketing, advertising and promoting its beverages as "All Natural" and/or containing specific fruit juice(s) , Snapple attempts to induce consumers to purchase Snapple beverages from retailers.

73.     As a result of Defendant's wrongful and deceptive conduct, Plaintiffs and members of the Class and Subclass have purchased Snapple beverages to their detriment while Defendant has received a benefit.

74.     Defendant should not be allowed to retain the enormous profits generated from the sale of products that were unlawfully marketed, advertised and promoted.

75.     Allowing Defendant to retain these unjust profits would offend traditional notions of justice and fair play and induce companies to misrepresent key characteristics of their products in order to increase sales.

76.     Thus, Defendant is in possession of funds which were wrongfully retained from consumers and which should be disgorged as illegally gotten gains.

## COUNT III

## BREACH OF EXPRESS WARRANTY

77.     Plaintiffs repeat and re-allege each and every allegation above, as if set forth in full herein.

78.     Defendant expressly warranted in its marketing, advertising and promotion of Snapple beverages, one or more of the following:

      a.      that its beverages are "All Natural";

      b.      that its beverages contain specific fruit juice(s);

79.     Plaintiffs and members of the Class and Subclass purchased Snapple beverages based upon the above said express warranties.

80.     Defendant breached its express warranties by including HFCS in its beverages that it marketed, advertised and promoted as "All Natural."   HFCS is a man-made, highly processed sugar substitute that is manufactured by using enzymes (or acids) to alter the chemical structure of starch molecules.  HFCS does not exist in nature and is not "All Natural."

81.     Defendant breached its express warranties by marketing, advertising and promoting its beverages as containing specific fruit juice(s) when, in fact, no such specific fruit juice(s) is contained in its beverages.

82.    As a direct and proximate result of Defendant's breach of its express warranties,

Plaintiffs and members of the Classes and Subclasses have been damaged in that they did

not receive the product as specifically warranted and/or paid a premium for the product

because they believed it was "All Natural," and/or contained specific fruit juices.

## COUNT IV

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

83.    Plaintiffs repeat and re-allege each and every allegation above, as if set forth in

full herein.

84.    Defendant impliedly warranted that the beverages it manufactured, sold and

distributed were "All Natural," and/or contained specific types of fruit juice, and in doing

so, that the products were merchantable and fit for their intended purpose.  Defendant did

so with the intent to induce Plaintiffs and members of the Class and Subclass to purchase

those products.

85.    Defendant breached those implied warranties in that the products were not "All

Natural" and did not contain specific fruit juice(s) as marketed, advertised and promoted.

86.    Had Plaintiffs and the members of the Classes and Subclasses known the true

facts, they either would not have purchased the products or would not have been willing

to pay the premium price Defendant charged for the products.

## PRAYER FOR RELIEF

87.    Plaintiffs, on Plaintiffs' own behalf and on behalf of the Classes and Subclasses,

pray for the following relief:

   a.  An Order that this action be maintained as a class action and that Plaintiffs

   be appointed class representatives.

b.  An Order appointing the undersigned attorneys as class counsel in this action.

c.  A declaration that the use of the phrase "All Natural" in the marketing, advertising and promotion of products containing HFCS is misleading, inaccurate and deceptive.

d.  A declaration that Defendant's use of the phrase "All Natural" in the marketing, advertising and promotion of its beverages violates the New York Deceptive Trade Practices Act, Section 349, General Business Law, *et seq*.

e.  A declaration that Defendant misleadingly, inaccurately and deceptively marketed its line of beverages as containing specific types of fruit juice when, in fact, the specific fruit juice(s) was not contained in the beverage, in violation of New York Deceptive Trade Practices Act.

f.  A declaration that Defendant breached both express warranties and implied warranties of merchantability in marketing, advertising and promoting its beverages as "All Natural."

g.  A declaration that Defendant breached both express warranties and implied warranties of merchantability in marketing, advertising and promoting its beverages as containing specific fruit juice(s) when, in fact, they did not.

h.  A declaration that Defendant has been unjustly enriched its unlawful practices.

i.  An Order enjoining Defendant from marketing, advertising and promoting its beverages as "All Natural" so long as they contain HFCS.

j.  An Order enjoining Defendant from marketing, advertising and promoting

its beverages as containing specific fruit juice(s) when, in fact, the specific

fruit juice(s) is not contained in the beverage.

k.  An Order directing Defendant to disgorge profits derived from its

unlawful practices and to pay restitution to Plaintiff and all members of the

Class and Subclass.

l.  An Order compelling Defendant to reimburse Plaintiffs and all members

of the Classes and Subclasses in an amount equal to their ascertainable loss as

described below.

m.  An Order directing Defendant to pay treble damages based upon the above

said violations of the New York Deceptive Trade Practices Act and other

applicable law.

n.  An Order directing Defendant to pay attorneys fees and costs associated

with this litigation.

## JURY DEMAND

Plaintiffs demand trial by jury on all issues herein stated.

WILENTZ, GOLDMAN & SPITZER P.A.
110 William Street
26th Floor
New York, New York  10038-3901
(212) 267-3091

By:    _____

DANIEL R. LAPINSKI, ESQ.

TUNNEY & HALBFISH, ESQS.
245 Main Street
Woodbridge, New Jersey  07095
(732) 636-4900


By:        _____/s/_____
           MICHAEL HALBFISH, ESQ.

           Attorneys for Plaintiffs and the Proposed Class

To be admitted *pro hac vice*
Philip Tortoreti, Esq.
TORTORETI, TOMES & CALLAHAN, P.C.
150 B Tices Lane
East Brunswick, New Jersey 08816
(732) 257-9100


DATED:   November 20, 2007

#3826773